No. 84-199

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

RONALD ALLEN SMITH,

        Defendant and Appellant.

---

APPEAL FROM:  District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Michael Keedy, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Gary G. Doran argued, Kalispell, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
James Scheier argued, Asst. Atty. General, Helena
Ted O. Lympus, County Attorney, Kalispell, Montana

---

Submitted:  June 25, 1985

Decided:  September 10, 1985

Filed:  SEP 10 1985

*Ethel M. Harrison*
_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

The defendant, Ronald Allen Smith, was convicted of aggravated kidnapping, two counts, and deliberate homicide, two counts. The defendant was convicted of each count pursuant to pleas of guilty entered in the District Court of Flathead County, State of Montana. The defendant was sentenced to death. The judgment and sentence were affirmed by this Court in State v. Ronald Allen Smith (Mont. 1985), _____ P.2d. _____, 42 St.Rep. 463.

This Court is again asked to reconsider the record and remand the matter for an additional psychiatric evaluation of defendant and a rehearing of the defendant's sentence, based upon a United States Supreme Court case of Ake v. Oklahoma (1985), _____ U.S. _____, 105 S.Ct. 1087, 84 L.Ed.2d 53, which came down after argument in this case.

On August 4, 1982, defendant kidnapped and killed Harvey Mad Man, Jr., and Thomas Running Rabbit, Jr., at a remote location near U.S. Highway 2, west of the eastern border of Flathead County. On August 3, 1982, the defendant and two companions, Andre Fontaine and Rodney Munro, had departed from Alberta, Canada. The three encountered the two victims, Mad Man and Running Rabbit, at a bar in East Glacier, Montana. While at the bar, the three shot pool and drank beer with Mad Man and Running Rabbit. The three left the bar in East Glacier and hitchhiked west along Highway 2. There had been discussion between the defendant and Andre Fontaine about stealing a car and the need to eliminate any witnesses to the theft. Shortly thereafter, the three men were picked up by Mad Man and Running Rabbit. The men drove for approximately twenty minutes and stopped to allow Mad Man

and Running Rabbit to relieve themselves. When the two men got back into the car, the defendant pulled a sawed-off single-shot bolt action .22 rifle, brought illegally into this country, and pointed it at the driver. Munro displayed his knife to the passenger. The defendant and Munro marched the two victims into the trees. The defendant shot Harvey Mad Man in the back of the head at point-blank range. He reloaded the rifle, walked several feet to where Thomas Running Rabbit had fallen to the ground upon being stabbed by Munro, and shot him in the temple at point-blank range. Both men were killed instantly. The defendant and the other two then stole the victims' car and proceeded to California. The car was later recovered when Fontaine and Munro were arrested for armed robbery in California. The defendant was arrested in Wyoming.

An information was filed charging the defendant with two counts of aggravated kidnapping and two counts of deliberate homicide. An arraignment hearing was held on November 1, 1982, at which time the defendant entered a plea of "not guilty" to all charges. On February 24, 1983, the defendant entered a change of plea. The defendant admitted shooting both victims in the head. The court was apprised of the defendant's intention to seek the death penalty.

At the sentencing hearing on March 21, 1983, the court and parties reviewed the presentence report and, after one minor correction, the court admitted it without objection. At the hearing, the defendant testified that he had been in prison for eight of the last ten years, and that he had lived by petty theft and selling drugs when he was not in prison. He testified in detail about the sixteen prior offenses listed in the presentence report. He testified to the facts

3

of the killing. He stated that Munro was aware of his intent to kill the victims because he intended to steal their car and wished to leave no witnesses. He stated that in addition to his desire to eliminate the witnesses to the car theft, he had had a "morbid fascination to find out what it would be like to kill somebody." He testified that he had consumed two or three beers on the night of the crime but that his ability to understand his actions were not impaired. He testified he sought the death penalty because a prolonged period of incarceration would be of no benefit to himself or society and because he foresaw problems with the Indian population at the prison. He testified that he felt no remorse for the killings, that he considered himself a violent person, and that he felt he could kill again. He stated that he had no desire to change his lifestyle. Following extensive questioning by the court, the defendant denied being under the influence of drugs, intoxicants or extreme stress and stated that he knew of no mitigating circumstances.

On March 21, 1983 at the conclusion of the hearing to determine the existence and nature of any aggravating or mitigating circumstances, the court imposed a sentence of death upon the defendant.

Subsequently, the defendant filed a motion to seek a reconsideration of the death penalty and a motion for a psychiatric examination. The court held a hearing on the motions on May 3, 1983. At the hearing, the defendant testified that his family had induced him to change his mind and seek a lesser penalty than death. He testified that his earlier desire for the death penalty was the product of depression which had resulted from the long period of

4

solitary confinement in the Flathead County Jail following his arrest. He further testified that he had designed his earlier testimony to induce the court to sentence him to death, and that he had concealed a potential mitigating factor--his use of drugs and alcohol. He testified that he and Munro had used three or four hundred "hits" of LSD during the period of time immediately prior to their entry to the United States, ending the day before the murders. He further testified that on the day of the crime he had consumed approximately twelve beers.

On June 10, 1983 the court granted the defendant's motion for psychiatric evaluation. The court appointed a psychiatrist, Dr. William Stratford, to examine the defendant and report to the court as to: (1) whether he could determine which of the versions given by the defendant was credible; and (2) what was the defendant's mental condition on August 4, 1982. The defendant requested the court to amend its order deleting the investigative function of Dr. Stratford. The court amended its order and directed Dr. Stratford to assume the truth of defendant's second version of the facts in performing his examination.

The court held a hearing on defendant's motion for reconsideration of the sentence on December 1, 1983. At the hearing, Dr. Stratford testified that he found no evidence that the use of drugs or alcohol affected the defendant's capacity to appreciate the criminality of his conduct, conform his conduct to the requirements of law, or form a criminal intent. He based his conclusions on the defendant's testimony and statements regarding his extensive use of LSD and his conduct on the day of the crime. According to Dr. Stratford, after three or four consecutive days of heavy LSD

5

usage the user develops a tolerance for the drug. As a result, large doses have little or no effect. Given the defendant's history of heavy LSD usage for a period of one month or more prior to the crime, Dr. Stratford concluded that the use of eight or nine, or even as many as fifty doses of LSD would not have affected the defendant's mental state when he committed the homicides.

Rodney Munro, the defendant's accomplice also testified at the hearing. Munro stated that at the time of the crime, he was experiencing confusion, flashes of light and hallucinations, having ingested approximately the same amount of drugs and alcohol as the defendant. He also testified that he had stabbed Running Rabbit once before the defendant shot him, and that it was possible Running Rabbit was already dead before he was shot.

On December 12, 1983, the defendant filed his motion for an additional psychiatric evaluation. The defendant's motion was denied.

In reviewing defendant's motion for reconsideration, the court entered findings of fact and conclusions of law to support its original sentence. The court found that beyond a reasonable doubt the aggravated kidnappings committed by the defendant resulted in the death of his victims, satisfying the statutory aggravating circumstance stated in section 46-18-303, MCA. ~~The court found that beyond a reasonable doubt the aggravated kidnappings committed by the defendant resulted in the death of his victims, satisfying the statutory aggravating circumstances stated in section 46-18-303, MCA.~~ The court found beyond a reasonable doubt that no mitigating circumstances were present. The court found that without exception, the defendant's consumption of

6

alcohol and drugs was voluntary, and did not impair or otherwise affect his state of mind, his capacity to recognize and appreciate the criminality of his conduct or his ability to control his actions and to conform his conduct to the requirements of law. The court concluded that the defendant made a conscious and voluntary choice to kill the victims notwithstanding his use of drugs and alcohol, and that intoxication was not a sufficient mitigating circumstance to call for leniency.

The defendant appealed from the sentence imposed. We affirmed. State v. Ronald Allen Smith, supra.

Defendant's petition for rehearing is based on Ake v. Oklahoma (1985), ____ U.S. ____, 105 S.Ct. 1087, 84 L.Ed.2d 53. Our province on the appeal is to determine whether the defendant is entitled to an additional psychiatric exam under Ake, supra. The defendant argues that the Ake decision established a constitutional right for defendant's access to competent psychiatric assistance where such assistance is essential to the effective defense of the case. The defendant argues that in light of the Ake decision, he is entitled to an additional psychiatric examination. We disagree. We find the Ake decision lacks direct application to Montana's capital sentencing proceeding and to the present case.

In Ake v. Oklahoma, supra, an indigent defendant was charged with first-degree murder. At his arraignment the trial judge ordered him to be examined by a psychiatrist due to his bizarre behavior. The defendant was initially found incompetent to stand trial, but six weeks later he was found competent so long as he continued to be sedated with anti-psychotic drugs. The defendant raised the insanity

7

defense and requested a psychiatric evaluation to determine his mental state at the time of the offense. The trial court denied defendant's motion for such an evaluation. The United States Supreme Court reversed and held that when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the constitution requires that the state provide access to a psychiatrist's assistance on this issue, if the defendant cannot otherwise afford one.

We find the Ake decision readily distinguishable from the case at bar. First, the psychiatric testimony in Ake raised the issue of the defendant's future dangerousness, which in Oklahoma is a statutory aggravating factor in a capital sentencing proceeding. Oklahoma Stat., Title 21, §152 (1981). In Montana, future dangerousness is not a statutory aggravating circumstance under the state's capital sentencing scheme. Section 46-18-303, MCA. Unlike the situation that existed in Ake, the state did not rely upon or present psychiatric evidence to establish any aggravating factors at sentencing. Further, in this case, at no time did the State attempt to elicit from Dr. Stratford an opinion concerning future dangerousness of the defendant.

Second, in Ake there was a trial. The defendant's sanity was a significant factor in his defense. In the present matter, the defendant plead guilty to the homicide and aggravated kidnapping offenses.

Third, in the United States Supreme Court decision, there was no expert testimony for either side on Ake's sanity at the time of the offense. Ake, 105 S.Ct. at 1091. However, in Smith, supra, Dr. Stratford, the psychiatrist,

8

gave extensive testimony as to the defendant's state of mind at the time of the offense including:

> (a) the effect of alcohol and drugs on the defendant's state of mind;
>
> (b) whether the defendant acted under extreme mental or emotional stress;
>
> (c) whether the defendant's capacity to appreciate the criminality of his conduct to the requirements of law was substantially impaired; and
>
> (d) a diagnosis of the defendant's mental condition. State v. Smith, 42 St.Rep. at 479.

Fourth, in Ake, the trial court denied defense counsel's request for a psychiatric examination of defendant with respect to his mental condition at the time of the offense. In the present case, the trial court granted defendant's initial request for the psychiatric evaluation. Following the examination and the psychiatrist's conclusion regarding the defendant's state of mind, the defendant filed a motion for an additional psychiatric evaluation. The second motion was denied. Based on the foregoing, we find the Ake decision readily distinguishable and without precedential merit to this case.

The defendant also argues that he was not provided with a competent psychiatrist. The defendant repeats his contention raised in the initial appeal that Dr. Stratford's role was contaminated by the investigative function imposed by the District Court. This contention raised by the defendant in his briefs and argument is identical to that in the first appeal, State v. Ronald Allen Smith, supra.

We have considered the argument not only in light of the issues raised in the original appeal, but also on the Ake decision. The United State Supreme Court in Ake, noted:

9

> This is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own. Our concern is that the indigent defendant have access to a competent psychiatrist for the purpose we have discussed, and as in the case of the provision of counsel we leave to the State the decision on how to implement this right. (Emphasis added.)
>
> Ake, supra, 105 S.Ct. at 1097.

The basic tenent of the Ake decision was to assure an indigent defendant's access to a competent psychiatrist for the preparation of a defense based on his mental condition. We find the defendant was afforded this right. The record clearly reflects Dr. Stratford's educational and professional qualifications. Dr. Stratford interviewed the defendant on two occasions at the Montana State Prison and considered the transcripts of the prior proceedings, the presentence report and witness statements provided by the defendant. Dr. Stratford also interviewed Rodney Munro and Andre Fontaine and secured a psychological profile of the defendant from Dr. Herman Walters.

Dr. Stratford's conclusion was that Smith had the capacity to appreciate the criminality of his conduct and that the drugs and alcohol did not have a substantial effect on the defendant's state of mind. The record demonstrates that Dr. Stratford was a neutral psychiatrist who examined Smith as to his sanity at the time of the offenses. Dr. Stratford testified to the foregoing at the hearing and it was on that basis that this Court found no additional psychiatric evaluation was necessary.

Accordingly, we find that Ronald Allen Smith is not entitled to a second psychiatrist's evaluation.

_____
Justice

We concur:

_J. A. Turnage_
Chief Justice

_Fred J. Weber_

_Frank B. Morrison_

_John C. Sheehy_

_William E. Hunt_

_L. C. Gulbrandson_

Justices