No.   92-149 and 92-133

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

STATE OF MONTANA,

     Plaintiff and Respondent,

-vs-

RONALD ALLEN SMITH,

     Defendant and Appellant.

**FILED**

NOV - 9 1993

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          William  F.  Hooks  (argued),  Appellate  Defender
Office, Helena, Montana

     For Respondent:

          Hon. Joseph P. Mazurek, Attorney General, Elizabeth
L.  Griffing  (argued),  Ass't  Attorney  General,
Helena, Montana

          Thomas J. Esch, Flathead County Attorney, Kalispell,
Montana

Submitted:   May 27, 1993

Decided: November 9, 1993

Filed:

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Ronald Smith appeals from the Findings of Fact, Conclusions of Law, Order and Judgment entered by the Eleventh Judicial District Court, Flathead County, imposing the death penalty. We reverse and remand for resentencing.

We consider the following issues on appeal:

1. Did the District Court violate Smith's Fifth Amendment, Sixth Amendment or due process rights by considering Stratford's report and testimony?

2. Did the District Court violate Smith's Fifth Amendment or Sixth Amendment rights by considering the 1983 presentence investigation report?

3. Did the District Court err by failing to order a current presentence investigation report?

4. Did the District Court err by finding the existence of aggravating factors set forth in § 46-18-303(5) and (7), MCA?

5. Does Montana's death penalty statute constitutionally allocate the burden of proving aggravating and mitigating circumstances?

6. Did the District Court err by adopting verbatim the State's proposed findings of fact and conclusions of law?

7. Did the District Court err by filing its written findings of fact one week after orally imposing the death penalty?

8. Did the District Court err by excluding evidence of mitigating circumstances?

9. Did the District Court Judge assigned to hear the disqualification proceedings err by denying the motion to disqualify the sentencing judge?

A claim of ineffective assistance of counsel was raised on appeal, but subsequently withdrawn.

This appeal results from the third sentencing of Ronald Smith (Smith) for his participation in the kidnapping and deliberate

2

homicide of Thomas Running Rabbit, Jr., and Harvey Mad Man, Jr. The factual background of these offenses is set forth in State v. Smith (1985), 217 Mont. 461, 705 P.2d 1087; reh'g denied, State v. Smith (1985), 217 Mont. 453, 705 P.2d 1110; cert. denied, Smith v. Montana (1986), 474 U.S. 1073, 106 S.Ct. 837, 88 L.Ed.2d 808 (Smith I).

At his February 1983 arraignment, Smith pled guilty to two counts each of deliberate homicide and aggravated kidnapping. He presented no evidence of mitigating circumstances and requested the death penalty. In March of 1983, the district court found Smith guilty of the offenses and imposed the death sentence.

In April of 1983, Smith moved for reconsideration of the sentence and for a psychiatric examination to establish mitigating circumstances. At a hearing on the motions held in May of 1983, Smith testified that he had committed the offenses under the influence of alcohol and drugs and, therefore, that his state of mind constituted one or more of the mitigating circumstances specified in § 46-18-304, MCA.

The district court granted the motion for a psychiatric examination and appointed Dr. William Stratford (Stratford), a psychiatrist, to determine whether Smith's May 1983 testimony was credible in light of his previous failure to assert mitigating circumstances. The court also directed Stratford to assume that the testimony was true and to offer an opinion on whether: 1) Smith's mental state was affected by the consumption of alcohol and drugs; 2) his capacity to appreciate the criminality of his conduct

3

was impaired; and 3) his actions were influenced by extreme emotional or mental distress. Stratford filed his report in September of 1983, concluding that he could not determine the veracity of the testimony and that none of the specified mitigating circumstances existed.

In December of 1983, Smith moved for an additional psychiatric evaluation to develop other mitigating circumstances. He asserted that the court biased Stratford by questioning the veracity of his statements and improperly limited the scope of Stratford's evaluation. The court denied the motion and, in February of 1984, reimposed the death sentence. We affirmed the conviction and sentence in Smith I.

Smith then petitioned for federal habeas corpus relief, which was denied. Smith appealed to the United States Court of Appeals for the Ninth Circuit. The Ninth Circuit held that the appointment of Stratford did not comply with the requirements of Ake v. Oklahoma (1985), 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53, and, therefore, that it violated Smith's right to due process. Smith v. McCormick (9th Cir. 1990), 914 F.2d 1153, 1158-59. The Ninth Circuit remanded the matter to federal district court with instructions to grant the writ unless the state district court appointed a defense psychiatrist and conducted a new sentencing hearing. The district court subsequently appointed Dr. Noel Hoell (Hoell), a psychiatrist; Shawn Trontel (Trontel), a social worker; David Vance (Vance), a sentencing consultant; and Dr. Lawrence Halpern (Halpern), a pharmacologist, to assist Smith in preparing

4

for the sentencing hearing.

After substitution of the original sentencing judge, Smith's third sentencing hearing was held on January 14, 1992. Hoell, Trontel, Vance and Halpern testified on his behalf. The District Court denied Smith's motion to preclude Stratford's testimony and report after the State agreed to use the evidence only to rebut mitigating circumstances.

Following the hearing, Smith moved to disqualify the presiding judge. Smith asserted that the judge made a statement to a defense witness which evidenced personal bias. Judge Robert Boyd was assigned to preside over the disqualification proceedings and subsequently denied Smith's motion.

On March 13, 1992, the District Court orally imposed the death sentence after finding two aggravating factors set forth in § 46-18-303, MCA, and determining that the mitigating evidence Smith presented was not sufficiently substantial to call for leniency. The court filed findings of fact, conclusions of law, order and judgment consistent with its bench ruling on March 20.

Smith's appeal from the sentencing order is denominated as Cause No. 92-149. The statutory automatic review of the death sentence is denominated as Cause No. 92-133. The two causes have been consolidated by order of this Court. Because we are remanding for resentencing, we do not address the issues encompassed in an automatic review of the death sentence.


Did the District Court violate Smith's Fifth Amendment, Sixth Amendment or due process rights by considering Stratford's report

5

and testimony?

FIFTH AMENDMENT

Smith asserts that he was not advised of his right to remain silent when interviewed by Stratford in 1983. On that basis, he contends that his Fifth Amendment privilege against self-incrimination was violated by the District Court's reliance on Stratford's report and testimony to establish aggravating factors and rebut mitigating evidence. He relies on Estelle v. Smith (1981), 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359. The State contends that this issue was raised and rejected in Smith I and, therefore, that it is barred by the law of the case doctrine.

The Fifth Amendment argument raised by Smith in the case before us is not the precise argument raised in Smith I. There, he contended that Stratford's inquiry into the credibility of his May 1983 statements violated his privilege against self-incrimination under Estelle because he did not request his credibility to be examined. Smith I, 705 P.2d at 1100-01. Here, Smith's Fifth Amendment argument focuses on the alleged use of Stratford's report and testimony to establish aggravating factors and rebut mitigating factors. Thus, Smith is not technically barred from raising the argument by the law of the case doctrine.

Smith's Fifth Amendment argument in the case before us, however, is flawed in the same respect as his argument in Smith I. In Smith I, we distinguished the circumstances surrounding Smith's psychiatric examination from those in Estelle. The Fifth Amendment

6

violation in Estelle arose from the state's use of a defendant's statements elicited at a court-ordered competency examination. We determined that Smith had waived his Fifth Amendment privilege regarding statements made during Stratford's interview because, unlike the Estelle defendant, he initiated the psychiatric examination. Thus, no compelled testimony was placed before the court. Furthermore, we observed that Smith had access to the advice of counsel prior to the psychiatric examination. Smith I, 705 P.2d at 1101.

The waiver of Smith's Fifth Amendment privilege applies whether the statements made during the course of the psychiatric examination are used to challenge Smith's credibility or to establish aggravating circumstances and rebut mitigating circumstances. There is simply no basis for Smith's argument that the statements made during Stratford's examination, which he requested, were compelled against his will. We conclude that the District Court's consideration of the Stratford report and testimony did not violate Smith's Fifth Amendment privilege against self-incrimination.

SIXTH AMENDMENT

Smith asserts that the State used Stratford's report and testimony to establish aggravating factors and rebut mitigating circumstances, exceeding the scope of the examination as set forth by the District Court. On that basis, he argues that he was not able to effectively consult with his attorney in preparation for

7

the examination, violating his Sixth Amendment right to counsel under <u>Estelle</u> and Powell v. Texas (1989), 492 U.S. 680, 109 S.Ct. 3146, 106 L.Ed.2d 551. The State contends that Smith had the opportunity to consult with his attorney prior to the psychiatric examination and that <u>Estelle</u> placed Smith's counsel on notice that the results of the psychiatric examination could be used to rebut mitigating circumstances.

In <u>Estelle</u> and <u>Powell</u>, the defendants were ordered to submit to psychiatric examinations to determine their competency to stand trial. After conviction, however, the prosecution presented evidence obtained at the examinations at the penalty phase of the proceedings to establish the defendants' future dangerousness--a statutory prerequisite for imposing the death penalty in Texas. Texas' "future dangerous" requirement is analogous to the aggravating factors required in Montana for imposition of the death penalty.

The United States Supreme Court determined that because the defendants' counsel had not been informed that the psychiatric examinations would encompass the issue of future dangerousness, the defendants' Sixth Amendment right to counsel had been violated. <u>Powell</u>, 492 U.S. at 685-86; <u>Estelle</u>, 451 U.S. at 470-71. The Supreme Court reasoned that, because the psychiatric examinations exceeded the scope of the courts' orders, the defendants were denied the assistance of their counsel in determining whether to submit to the examination and in ascertaining the prosecution's possible use of its results. <u>Estelle</u>, 451 U.S. at 471.

8

Here, the State did not use Stratford's report and testimony to establish aggravating factors. At the January 14, 1992, sentencing hearing, the court denied Smith's motion in limine to exclude the Stratford evidence after the State agreed to limit its use of that evidence to rebutting Smith's evidence of mitigating circumstances. The prosecution presented its case for aggravating circumstances; it did not rely on the psychiatric evidence in any way to establish the aggravating factors. Smith then presented his case for mitigation, and the State presented the Stratford evidence in rebuttal. The record reflects a diligent effort by the State to confine its use of the Stratford material to rebutting Smith's psychiatric evidence of mitigating factors.

It is true that the District Court cited to Stratford's report to support several of its findings relating to the statutory aggravating factors. However, the report did not serve as the court's sole support for any of the findings. In each instance, the citation to Stratford's report merely supplemented preceding citations to other evidence presented during the State's case for aggravating circumstances.

Nor did the State's use of the psychiatric evidence to rebut mitigating circumstances exceed the scope of the court-ordered examination. Stratford was appointed by the court during the sentencing phase to resolve Smith's conflicting testimony concerning mitigating circumstances, and to offer an opinion on the existence of three specified mitigating circumstances. Clearly, the focus of the psychiatric examination was to evaluate mitigating

9

circumstances for the purposes of sentencing. Smith's counsel could have advised Smith of the State's possible use of the evidence obtained.

In sum, the State's use of Stratford's report and testimony was qualitatively different from the prosecution's use of the psychiatric evidence in Powell and Estelle; it was not relied on to resolve any issue outside the scope of the court's order for the psychiatric examination. We conclude that Smith's Sixth Amendment right to counsel was not violated by the District Court's consideration of the Stratford report and testimony.

DUE PROCESS

Smith also contends that the District Court's consideration of Stratford's report and testimony violated his due process rights, relying on Smith v. McCormick (9th Cir. 1990), 914 F.2d 1153, 1160. The State contends that the due process error found by the Ninth Circuit has been cured by the appointment of an independent psychiatrist and three other experts to assist Smith in preparing for the resentencing hearing.

When an indigent defendant places his mental state at issue, either at trial or at a sentencing hearing, the state must assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in the evaluation, preparation and presentation of defendant's case. Ake, 470 U.S. at 83-84. In Smith v. McCormick, the Ninth Circuit determined that Stratford's appointment and his psychiatric examination of Smith

10

fell short of <u>Ake</u>'s due process requirements. Because the sentencing court limited the psychiatric examination and required Stratford to report directly to the court, Smith did not have the opportunity to discuss the results with Stratford or to explore other more favorable mitigating circumstances, which compromised his ability to present his claims. <u>McCormick</u>, 914 F.2d at 1159.

This due process flaw was cured by the District Court's subsequent appointment of Hoell, Trontel, Vance and Halpern. They were available to provide psychiatric assistance in preparing Smith's case for mitigation prior to the January 14, 1992, sentencing hearing. These experts could--and did--assist Smith in evaluating the mitigating circumstances addressed by Stratford to determine, as a threshold matter, whether to place those issues before the court. Additionally, their assistance afforded Smith the opportunity to develop additional mitigating circumstances.

We hold that the District Court's consideration of Stratford's report and testimony did not violate Smith's Fifth Amendment, Sixth Amendment or due process rights.


Did the District Court violate Smith's Fifth or Sixth Amendment rights by considering the 1983 presentence investigation report?

FIFTH AMENDMENT

Smith asserts that he was not advised of the right to remain silent when interviewed by probation officer Jerrold Cooley (Cooley) in 1983. On that basis, he contends that the sentencing court violated his Fifth Amendment privilege against self-

incrimination when it relied on Cooley's testimony and presentence investigation report, citing Estelle. We considered and rejected this same argument in Smith I. We determined, in part, that Smith's statements made during the presentence interview were voluntary, and distinguished Estelle based on the absence of compelled testimony. Furthermore, we determined that the presentence investigation report was cumulative as Smith's own testimony confirmed the substance of the report. Smith I, 705 P.2d at 1094.

Under the doctrine of law of the case, a prior Montana Supreme Court decision resolving a particular issue between the same parties in the same case is binding and cannot be relitigated in a subsequent appeal. State v. Van Dyken (1990), 242 Mont. 415, 425-26, 791 P.2d 1350, 1356. Here, the doctrine clearly precludes Smith from reasserting this argument.

Smith asserts that this doctrine is merely a rule of procedure, not a mandatory rule of law, and should not be applied if the result is unjust. Smith argues that application of the doctrine is unjust because it precludes consideration of subsequent United States Supreme Court and Circuit Courts of Appeal decisions that have refined Estelle. However, the only subsequent case relied on by Smith is Powell v. Texas (1989), 492 U.S. 680, 109 S.Ct. 3146, 106 L.Ed.2d 551. Smith does not articulate a specific refinement that might justify a different result than that reached in Smith I, nor do we find one. Therefore, we decline to address anew Smith's Fifth Amendment argument.

12

SIXTH AMENDMENT

Smith asserts that a presentence interview in a capital offense is a critical stage in the proceedings, relying on State v. Robbins (1985), 218 Mont. 107, 708 P.2d 227, and Bullington v. Missouri (1981), 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270. He then argues that the District Court relied on his "uncounselled" statements made during the presentence investigation interview to impose the death penalty, violating his Sixth Amendment right to counsel. The State contends that Smith was represented by counsel prior to the presentence interview and had ample opportunity to consult with his attorney regarding the presentence investigation and the possible uses of the resulting report.

Even if preparation of the presentence investigation is viewed as a "critical stage" of the proceedings, we conclude that Smith's Sixth Amendment right to counsel was not violated under the Supreme Court's Estelle analysis. As detailed earlier, the defendant's right to counsel was violated in Estelle because the psychiatric examination exceeded the scope of the court's order. The defendant's attorney had not been notified in advance that the psychiatric examination would include the issue of "future dangerousness," denying the defendant the assistance of his attorney in making the significant decision of whether to submit to the examination. Estelle, 451 U.S. at 471.

The case before us provides no basis for finding a Sixth Amendment violation relating to the presentence investigation report. Smith was represented by counsel at the February 1983

13

arraignment at which he entered his guilty pleas and requested the death penalty. At the arraignment's conclusion, the District Court scheduled a "hearing in aggravation or mitigation of sentence" and ordered a presentence investigation and report to be submitted prior to the hearing. Thus, Smith and his attorney knew in advance that a presentence investigation had been ordered and that the ensuing report would be used in connection with aggravating and mitigating circumstances at the sentencing hearing. Smith was aided by the "guiding hand of counsel" in preparing for the presentence investigation. Estelle, 451 U.S. at 471.

We hold that the District Court did not violate Smith's Sixth Amendment right to counsel by considering the presentence investigation report.

Did the District Court err by failing to order a current presentence investigation report?

Smith argues that the District Court erred by relying on the presentence investigation report prepared in 1983. The State contends that the District Court properly relied on the 1983 report, asserting that Smith did not request a current report and that the court did not have a duty to order one sua sponte.

Montana law generally requires the District Court to order a current presentence report prior to sentencing in felony cases. The circumstances under which a presentence investigation report is required are governed by § 46-18-111, MCA, which provides in part:

> **Presentence investigation - when required.** (1) Upon the acceptance of a plea . . . of guilty to one or more felony offenses, the district court shall direct the probation officer to make a presentence investigation and

14

report . . . .

> (2) If the court finds that the record contains
> information sufficient to enable the meaningful exercise
> of discretion during sentencing, the defendant may waive
> a presentence investigation and report. Both the finding
> and the waiver must be made in open court on the record.

Thus, absent certain circumstances, § 46-18-111, MCA, places an affirmative duty on the court to order a presentence investigation report in felony cases. A defendant is under no obligation to request the report.

Nor do the statutory circumstances under which a court may decline to order a presentence investigation report exist here. As set out above, those circumstances require a finding by the court and a waiver by the defendant. Section 46-18-111(2), MCA. The District Court did not make the requisite finding here. In any event, and more importantly, Smith did not waive the investigation and report pursuant to the statute. We conclude, therefore, that the District Court was required to order the preparation of a current presentence investigation and report.

The State contends that the testimony of Vance, the probation officer appointed to assist Smith, served as an adequate substitute for a current presentence report. We disagree. The statute does not permit a "substitute" report by a "substitute" probation officer. Vance was appointed by the court to assist Smith in preparing his defense. Whatever the extent and quality of Vance's work, it does not constitute an official presentence investigation and report, prepared by a probation officer, as required by § 46-18-111, MCA, and containing all information mandated by § 46-18-

15

112, MCA.

The stated thrust of Chief Justice Turnage's dissent is the concern that our decision on this issue "would seem to allow consideration of post-offense aggravating circumstances in a resentencing." (Emphasis added.) Nothing could be further from the truth, as a reading of the statutes set forth by the dissent makes clear.

Section 46-18-303, MCA, enumerates the aggravating circumstances which can result in imposition of the death penalty by a Montana court. The listed aggravating circumstances are both specific and exhaustive; each either exists or does not exist as of the moment of the offense. No other facts or evidence can constitute an aggravating circumstance under Montana law.

Section 46-18-304, MCA, on the other hand, sets forth circumstances which may mitigate against imposition of the death penalty. The statute begins by listing, much as the aggravating circumstances statute does, specific mitigating circumstances. Seven of the eight mitigating circumstances relate directly to the offense itself, the defendant's participation in that offense, or the time at which the offense occurred. See §§ 46-18-304(1)-(7), MCA.

Critically important here, however, statutory mitigating circumstances also include "[a]ny other fact that exists in mitigation of the penalty." Section 46-18-304(8), MCA. This enormously broad "catch-all" mitigating circumstance reflects the legislature's clear intent to permit a defendant to raise any and

16

all facts and evidence which might mitigate against the death penalty. It also corresponds to Montana's sentencing policy, reflected in § 46-18-112(1)(a), MCA, which requires inclusion in a presentence investigation report of "the defendant's characteristics, circumstances, needs, and potentialities." Nothing in the language of § 46-18-304(8), MCA, supports the dissent's theory that mitigating evidence of conduct subsequent to the offense cannot be offered and received during a sentencing hearing the result of which may be imposition of the death penalty.

Furthermore, as discussed in issue 8, the dissent's theory that post-conviction conduct is not relevant mitigating evidence flies in the face of both controlling precedent from the United States Supreme Court and the Ninth Circuit Court of Appeals' decision in Smith v. McCormick (9th Cir. 1990), 914 F.2d 1153, which resulted in the resentencing at issue here. The United States Supreme Court has made it clear that a sentencing court in a capital case must consider any and all relevant mitigating evidence. Lockett v. Ohio (1978), 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973. The Supreme Court defines relevant mitigating evidence to include post-offense conduct during incarceration. Skipper v. South Carolina (1986), 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1. In addition, on habeas corpus review of Smith's prior sentencing, the Ninth Circuit stated without equivocation that such factors as Smith's admission of guilt, his contrition and his commitment to rehabilitation "were all clearly relevant as mitigating evidence." Smith, 914 F.2d at 1164. The factors which

17

the Ninth Circuit specifically found relevant as mitigating evidence were post-offense matters.

The dissent's theory of what is, and what is not, relevant mitigating evidence is not legally supportable. As a practical matter, therefore, adoption of that theory would ensure yet another resentencing following Smith's next trip to the Ninth Circuit.

We hold that the District Court erred by failing to order a current presentence investigation and report upon resentencing.


Did the District Court err by finding the existence of aggravating factors set forth in § 46-18-303(5) and (7), MCA?

The District Court found that two aggravating factors set forth in § 46-18-303(5) and (7), MCA, were present. Section 46-18-303, MCA, provides in pertinent part:

> **Aggravating circumstances.** Aggravating circumstances are any of the following:
>
> . . .
>
> (5) The offense was deliberate homicide and was committed as a part of a scheme or operation which, if completed, would result in the death of more than one person.
>
> . . .
>
> (7) The offense was aggravated kidnapping which resulted in the death of the victim or the death by direct action of the defendant of a person who rescued or attempted to rescue the victim.

Smith advances several challenges to the District Court's finding of these aggravating circumstances. He first argues that § 46-18-303(5), MCA, fails to establish the precise conduct which constitutes a "scheme or operation" and, as a result, does not

18

limit the sentencing judge's discretion to impose the death sentence as required by Gregg v. Georgia (1976), 428 U.S. 153, 192-95, 96 S.Ct. 2909, 2934-35, 49 L.Ed.2d 859, 885-87 (citing Furman v. Georgia (1972), 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346.)

It is true that each statutory aggravating circumstance must satisfy a constitutional standard derived from Furman; the aggravating circumstance cannot be so vague that it fails to "channel" the discretion of the sentencing court, resulting in arbitrary and capricious sentencing. Zant v. Stephens (1983), 462 U.S. 862, 876-77, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235, 249-50. The aggravating circumstance must "genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty" of the predicate offense. Zant, 462 U.S. at 877.

We conclude that § 46-18-303(5), MCA, satisfies this constitutional standard by narrowing the class of persons eligible for the death penalty in two respects. First, the provision requires that the offense of deliberate homicide be committed as part of a scheme or operation. We have defined the word "scheme" as used in the statute to mean a "planned undertaking" or a "systematic plan." State v. Langford (1991), 248 Mont. 420, 438, 813 P.2d 936, 950. While the word "operation" has not been defined in the context of this statute, we believe it to be interchangeable with the term "scheme." See Langford, 813 P.2d at 950. Section 46-18-303(5), MCA, further narrows the class of persons eligible

19

for the death sentence by requiring that the scheme or operation contemplate the death of more than one person.

Smith also contends that the District Court erred in finding that he committed aggravated kidnapping which resulted in the death of the victim, the aggravating circumstance set forth in § 46-18-303(7), MCA. His aggravated kidnapping conviction was based on forcing Thomas Running Rabbit and Harvey Mad Man at gun point to enter into a forested area where the homicides occurred. He asserts that unlawful confinements or movements incidental to the commission of another felony do not constitute kidnapping, relying on State v. Anthony (Tenn. 1991), 817 S.W.2d 299.

We find no support for Smith's position in Anthony. That case, and the authorities upon which it relied, addressed the propriety of a "kidnapping" conviction when the conduct constituting the "kidnapping" was incidental to, and inherent in, another offense, such as robbery, rape or assault. Anthony, 817 S.W.2d at 303-06.

Furthermore, the thrust of Smith's argument challenges his conviction for aggravated kidnapping, rather than asserting error by the District Court in sentencing him. Smith was charged with two counts of aggravated kidnapping. He pled guilty to and, as a result, was convicted of these charges. He did not appeal his conviction. Thus, his argument that his conduct did not constitute aggravated kidnapping for the purpose of establishing an aggravated circumstance is without merit.

Finally, Smith contends that the District Court erred by using

20

the death of Thomas Running Rabbit and Harvey Mad Man as both a predicate felony under § 46-18-303(5), MCA, and an aggravating factor under § 46-18-303(7), MCA. He asserts that when used as an aggravating factor under § 46-18-303(7), MCA, the homicide offense does not narrow the class of persons eligible for the death penalty who have committed both predicate felonies of deliberate homicide and aggravated kidnapping.

The obvious flaw in Smith's argument is its suggestion that an aggravating factor is required to narrow the class of persons who have committed two predicate felonies, a position for which he cites no supporting authority. The aggravating factors set forth in § 46-18-303, MCA, are independent of each other. Each one, by itself, is sufficient to justify the sentencing court's imposition of the death penalty. Section 46-18-305, MCA. Under § 46-18-303(5), MCA, the requirement that the deliberate homicide be committed as part of a scheme or operation which, if completed, would result in the death of more than one person is the aggravating factor which narrows the class of persons who have committed the predicate felony of deliberate homicide. The death of the victim is the aggravating factor which narrows the class of persons who have committed the predicate felony of aggravated kidnapping under § 46-18-303(7), MCA. See State v. Keith (1988), 231 Mont. 214, 754 P.2d 474.

Smith was charged with, and pled guilty to, both aggravated kidnapping and deliberate homicide. The District Court determined that aggravating factors relating to each offense existed,

21

complying with the constitutional mandates of Zant. We conclude that Smith's conviction of both felonies does not prohibit the District Court from imposing the death sentence under either subsection (5) or (7) of § 46-18-303, MCA.

We hold that the District Court did not err in finding the existence of the aggravating circumstances set forth in § 46-18-303(5) and (7), MCA.

Does Montana's death penalty statute constitutionally allocate the burden of proving aggravating and mitigating circumstances?

Smith advances a number of arguments concerning the burdens of proof required to establish aggravating and mitigating circumstances and the standard by which the district court weighs them. He first argues that the State's burden of proving aggravating circumstances and the defendant's burden of proving mitigating circumstances are not set forth in §§ 40-18-303 and -304, MCA. He also argues that § 46-18-305, MCA, fails to establish the standard to govern the district court's consideration of them. Without citing authority, Smith contends that the failure to set forth explicit burdens of proof and standards may result in the arbitrary and capricious imposition of the death sentence or exclude mitigating evidence, violating Gregg v. Georgia and Lockett v. Ohio (1978), 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973. We disagree.

Section 46-18-305, MCA, requires a district court to impose the death penalty if it "finds one or more of the aggravating circumstances and finds that there are no mitigating circumstances

22

sufficiently substantial to call for leniency." This provision places the burden on the defendant to establish mitigating circumstances justifying a sentence less severe than the death penalty. Fitzpatrick v. State (1981), 194 Mont. 310, 328, 638 P.2d 1002, 1013.

We held in Fitzpatrick that this allocation of the burden of proof was constitutionally sound. Because mitigating factors are pertinent only to punishment and do not bear on a defendant's guilt or constitute an element of a crime, we determined that it was constitutionally permissible to place the burden of proving them on the defendant. Fitzpatrick, 638 P.2d at 1013. We are not persuaded by any of Smith's arguments urging us to find constitutional error in the allocation of burdens of proof.

Subsequent to Fitzpatrick, the United States Supreme Court reached the same conclusion. In Walton v. Arizona (1990), 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511, the Supreme Court opined that a state does not violate a defendant's constitutional rights by placing the burden of proving mitigating circumstances sufficiently substantial to call for leniency on the defendant so long as the state retains the burden of proving every element of the offense and the existence of an aggravating circumstance. Walton, 497 U.S. at 650.

Nor do we conclude that § 46-18-305, MCA, is constitutionally flawed because it fails to establish a standard governing the district court's weighing of the aggravating and mitigating factors. In Zant, the defendant challenged a Georgia capital

23

sentencing provision which, like § 46-18-305, MCA, did not set forth specific standards governing the sentencing jury's consideration of aggravating and mitigating circumstances. The defendant argued that, by failing to limit the sentencing jury's discretion, the provision allowed the arbitrary and capricious imposition of the death sentence. The Supreme Court declined to find constitutional error based on the lack of such standards. Zant, 462 U.S. at 875.

Smith also argues that § 46-18-305, MCA, violates due process and the prohibition against cruel and unusual punishment, relying on People v. Young (Colo. 1991), 814 P.2d 834. Young provides no support here. The death penalty provision at issue in Young required a jury to impose a capital sentence where the mitigating factors did not outweigh the aggravating factors. The Colorado Supreme Court determined that the provision violated the prohibition against cruel and unusual punishment and the due process clause contained in the Colorado constitution because the provision mandated a capital sentence even if the aggravating and mitigating factors were of equal weight. Young, 814 P.2d at 846-47.

Section 46-18-305, MCA, requires imposition of the death penalty if the court finds one or more aggravating circumstance and no mitigating circumstances sufficiently substantial to call for leniency. Unlike the Colorado provision, it does not require the death sentence to be imposed if the aggravating and mitigating factors are of equal weight. Thus, Young provides no basis for

24

finding § 46-18-305, MCA, unconstitutional.

We hold that Montana's death penalty statute does not unconstitutionally allocate the burden of proving mitigating and aggravating circumstances.


Did the District Court err by adopting verbatim the State's proposed findings of fact and conclusions of law?

Smith contends that the District Court failed to satisfy its duty to weigh aggravating and mitigating circumstances under § 46-18-305, MCA, by its verbatim adoption of the State's proposed findings. He relies on Patterson v. State (Fla. 1987), 513 So.2d 1257, 1261, in which the Florida Supreme Court found that a trial judge's delegation of the responsibility to prepare the sentencing order to the prosecution following oral imposition of the death sentence violated his statutory duty to "independently weigh" aggravating and mitigating circumstances.

We have previously expressed our displeasure with a district court's verbatim adoption of proposed findings. This is especially true when the district court is statutorily charged with weighing aggravating and mitigating factors in a matter so grave as the imposition of the death penalty. However, findings adopted in such a manner are not so inherently flawed that the prevailing party must be reversed. Sawyer-Adecor v. Int'l Auglin (1982), 198 Mont. 440, 447, 646 P.2d 1194, 1198. Findings and conclusions that are sufficiently comprehensive and pertinent to the issues to provide a basis for decision and are supported by evidence will not be overturned simply because the trial court relied on proposed

25

findings and conclusions submitted by counsel. In re the Marriage of Hagemo (1988), 230 Mont. 255, 260, 749 P.2d 1079, 1082-83.

We hold that the District Court did not err by adopting the State's proposed findings of fact and conclusions of law.

Did the District Court err by filing its written findings of fact one week after orally imposing the death penalty?

Smith contends that the District Court erred by filing its written findings one week after it orally imposed the death sentence. Smith relies on Christopher v. State (Fla. 1991), 583 So.2d 642, in which the Florida Supreme Court vacated a death sentence because the sentencing judge filed the written sentencing order two weeks after sentencing. Smith asserts that § 46-18-306, MCA, is similar to the Florida death penalty statute at issue in Christopher; both require written findings to be filed. On that basis, he contends that the same result must apply here. We disagree.

The Florida Supreme Court vacated the death sentence in Christopher based on a previously established procedural rule that required written orders to be filed concurrently with an oral pronouncement of the death penalty; failure to comply with the rule resulted in a remand for imposition of a life sentence. Christopher, 583 So.2d at 647. We have not established such a procedural rule in Montana.

The requirement that the district court issue written findings regarding the existence of aggravating factors and mitigating circumstances is set forth in § 46-18-306, MCA. No language in

26

that provision requires the court to file its written findings concurrently with its oral imposition of the death sentence. When construing statutes, we simply ascertain and declare what is in terms or in substance contained therein; we do not insert what has been omitted. Section 1-2-101, MCA. Absent a statutory requirement, we decline to require Montana courts to file written findings contemporaneously with an oral imposition of the death penalty.

We hold that the District Court did not err in filing its written findings one week after it imposed the death sentence.


Did the District Court err by excluding evidence of mitigating circumstances?

Smith asserts that the District Court "excluded from consideration" mitigating evidence concerning his good conduct while incarcerated, his abusive family background, and his codefendant's testimony regarding circumstances of the offense. He relies on Lockett, 438 U.S. at 604, and Skipper v. South Carolina (1986), 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1, for the general principle that a sentencing court may not refuse to consider, or be precluded from considering, mitigating evidence.

The State asserts that the sentencing court in Skipper violated Lockett's mandate that all mitigating evidence be considered by excluding, as irrelevant, testimony offered by defendant in mitigation. It argues that the District Court admitted all mitigating evidence offered by Smith and, therefore, that Skipper provides no basis for setting aside Smith's sentence.

27

We begin by recognizing the principle that a district court in a capital case may not be "precluded from considering, <u>as a mitigating factor</u>, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." <u>Lockett</u>, 438 U.S. at 604. The United States Supreme Court determined that this principle was violated in both <u>Lockett</u> and <u>Skipper</u>. In <u>Lockett</u>, an Ohio statute limited the range of mitigating circumstances that could be considered by the sentencing judge. <u>Lockett</u>, 438 U.S. at 608. The defendant in <u>Skipper</u> was prevented from presenting mitigating evidence because the sentencing court ruled it inadmissible. <u>Skipper</u>, 476 U.S. at 3.

Unlike <u>Lockett</u> and <u>Skipper</u>, Smith was not prevented from presenting any evidence of mitigation. The record reflects that the "excluded" evidence was before the court. Vance testified that Smith had been a manageable inmate while incarcerated; a letter from a Canadian penal officer to that effect was attached to Vance's amended sentencing memorandum which was filed with the court. Trontel testified about Smith's abusive family background. Codefendant Munro's testimony that he stabbed one of the victims before Smith fired the fatal gunshot and that Smith had ingested a significant amount of drugs and alcohol was read into the record. The real thrust of Smith's argument is his disagreement with the weight given to certain mitigating evidence. We conclude, therefore, that evidence of mitigating circumstances was not "precluded" from consideration within the meaning of <u>Lockett</u> and

28

Skipper.

Smith also asserts a number of errors based on the District Court's treatment of mitigating evidence in its written findings. As a basis for his arguments, he relies on the Ninth Circuit's language in McCormick that "[t]he sentencing judge must therefore explicitly discuss in its written findings all relevant mitigating circumstances, 'including those it finds insufficient to warrant leniency.'" McCormick, 914 F.2d at 1166.

Smith first argues that the District Court failed to discuss evidence relating to his good conduct while incarcerated as a mitigating circumstance in its written findings. The State asserts that Smith introduced the evidence solely to rebut character evidence that he maintained a violent lifestyle and continued to pose a threat to the safety of other persons. On that basis, the State contends that the evidence was considered in Finding No. 7 which concerned Smith's criminal history and stated that the homicides were not "out of character," in Finding No. 17 which pertains to Smith's prospect for rehabilitation, and in Finding No. 19 which indicates that the court considered character evidence.

The record reflects that Smith did not rely on the evidence of his good behavior while incarcerated solely to rebut character evidence, as asserted by the State. He presented such evidence as a separate mitigating circumstance throughout the January 14 sentencing hearing and in his proposed findings of fact.

Furthermore, the court's findings relating to character are not an adequate substitute for a finding reflecting the court's

29

consideration of Smith's conduct while incarcerated as a separate mitigating circumstance. Evidence that a defendant was well-behaved while previously incarcerated serves as a basis for an inference that the defendant will pose no danger if incarcerated for a life term; thus, such evidence is mitigating in the sense that it might serve "as a basis for a sentence less than death." Skipper, 476 U.S. at 4-5 (citation omitted). Smith's prior criminal history, inclination toward rehabilitation, and character do not directly reflect on his probable behavior in prison if a life sentence, rather than the death penalty, were imposed. We conclude that the findings relating to criminal history, rehabilitation and character do not reflect an explicit discussion of Smith's conduct while incarcerated as a separate mitigating circumstance as required by McCormick.

Smith also argues that the District Court failed to properly consider Trontel's testimony regarding Smith's abusive family background. He asserts that the court's treatment of the testimony was tantamount to dismissing her testimony as irrelevant and immaterial. We disagree.

The District Court's Finding of Fact No. 12 provides in part:

> The Court has taken into consideration and given effect to the evidence submitted which details Ronald Allen Smith's family history and his family relationships. Nonetheless, the Court cannot give this evidence significant weight as a mitigating factor. Ronald Allen Smith initially stated that he had a good childhood but that his parents were strict. While Shawn Trontel characterized Ronald Allen Smith's family as abusive, the Court is also mindful of Ms. Trontel's admitted opposition to the death penalty and the admitted influence that her philosophy has had on her conclusions. [Citations to the record omitted.]

30

The finding constitutes an explicit discussion of mitigating evidence concerning Smith's family background, including Trontel's testimony. Nothing in the finding supports Smith's assertion that the court deemed such evidence to be irrelevant or immaterial. Rather, the court determined that it could not give significant weight to the evidence presented; part of the court's reasoning was based on Smith's own statements which contradicted Trontel's. It is within the province of the sentencing court to determine the weight to be given relevant mitigating evidence. Eddings v. Oklahoma (1981), 455 U.S. 104, 114-5, 102 S.Ct. 869, 877, 71 L.Ed.2d 1, 11. While the district court is obligated to consider mitigating factors, it has no duty to give them overriding weight. Coleman v. Risley (9th Cir. 1988), 839 F.2d 434, 497. We conclude that the District Court properly considered Smith's mitigating evidence concerning his family background.

Smith also argues that the findings fail to discuss codefendant Munro's testimony concerning the circumstances of the offense. Munro testified that he initially stabbed Thomas Running Rabbit. Smith asserts that the possibility that Thomas Running Rabbit was dead when shot by Smith is a mitigating circumstance.

We disagree with Smith's characterization of this testimony as a mitigating circumstance. The gravamen of the testimony goes to Smith's culpability for committing the offense of deliberate homicide, an offense to which Smith pled guilty. Thus, the testimony, does not serve to mitigate against the imposition of the death penalty.

31

Finding of Fact No. 4 reflects that the court appropriately considered Munro's testimony in the context of the deliberate homicide offense. In this finding, the court determined that Smith had committed a deliberate homicide as part of a scheme or operation which, when completed, resulted in the deaths of two persons, an aggravating factor defined by § 46-18-303(5), MCA. It provides in part:

> Thomas Running Rabbit, Jr. then was struck with Munro's knife and fell to the ground. Ronald Allen Smith went over to Thomas Running Rabbit, Jr. while he was lying on the ground and shot him in the back of the head, killing him. [Citations to the record omitted.]

We conclude that the District Court did not err in confining its consideration of Munro's testimony to its finding of an aggravating factor under § 46-18-303(5), MCA, which requires deliberate homicide as a predicate offense.

Smith also argues that the District Court did not properly consider Munro's testimony relating to Smith's ingestion of alcohol and drugs prior to the commission of the crimes. The court's findings, however, reflect a consideration of this evidence. Findings of Fact No. 14 and 15 provide as follows:

> 14. While Ronald Allen Smith's alcohol use did not meet the statutory mitigating criteria in Section 46-18-304(2) and (4), MCA, the Court has nevertheless taken into consideration and given effect to Ronald Allen Smith's alcohol usage as a mitigating factor. Ronald Allen Smith described himself as "fairly loaded" at the time of the killings. Smith testified at the plea hearing that he was aware of his actions in shooting the young men and was not so intoxicated that he did not know what he was doing. At the time of the murders, Smith was able to talk and walk in a deliberate and purposeful manner. Smith gave the appearance that he knew what he was doing at the time of the offenses. Moments after the murders, Smith became concerned with the quality of Andre

32

Fontaine's driving and Smith then drove the now stolen car himself and did so without difficulty. The Court finds that Smith had consumed beer on the day of August 4, 1982, but that his consumption of the alcohol did not so affect his actions that it should be given significant weight as a mitigating factor.

15. With respect to Ronald Allen Smith's drug usage, the record is unclear as to when Smith consumed a number of doses of LSD or acid. The Court notes that there was no mention of such drug usage at the time of the plea hearing or the pre-sentence investigation.

Dr. Halpern, a pharmacologist, described typical symptoms of being under the influence of LSD, including dizziness, weakness, difficulty moving, hot or cold feelings, nausea, numbness, body lighter, body heavier, shaking of the body, and drowsiness. Dr. Halpern also described perceptual changes that may occur such as altered shapes, altered colors, blurred vision, visual contrast clearer, hearing more acute, sounds more acute. He testified that the drug may result in an altered mood and a distortion of time, and depersonalization. While Ronald Allen Smith has stated that he has had flashbacks, a heightened sensitivity in the senses, the Court finds it most notable that Ronald Allen Smith has not described, nor did any of his companions describe, him operating under or experiencing the numerous symptoms and affects from LSD at the time of the murders. Ronald Allen Smith did describe a "depersonalization" experience to Dr. Stratford, but this symptom stands alone. There is nothing in the record to indicate that Ronald Allen Smith was experiencing at the time of the murders any of the multi-faceted symptoms described by Dr. Halpern. Dr. Stratford opined that the depersonalization experience could have been caused by the stress of the murders themselves rather than drug usage. Because neither Ronald Allen Smith nor his companions described any symptoms indicating that Smith was under the influence of LSD, and because the record uniformly indicates that Smith was aware of his actions and that he acted in a methodical and deliberate fashion, the Court cannot give significant weight to the evidence of Smith's drug usage. [Citations to the record omitted.]

Here, the court determined that Smith had consumed beer prior to committing the offenses and that the record was unclear as to when he ingested a number of doses of LSD or acid. Thus, without explicitly citing to Munro's testimony, the findings take into

33

account the substance of his testimony.

Additionally, we do not agree with the thrust of Smith's argument that the finding must specifically refer to every piece of evidence offered in support of the mitigating circumstance. As the Ninth Circuit stated in Coleman, 839 F.2d at 502, the sentencing court is not required to provide an "extensive excursus" into each mitigating circumstance. We conclude that these findings constitute an explicit discussion of the evidence in mitigation relating to Smith's alcohol and drug ingestion.

We hold that the District Court did not preclude Smith from presenting any evidence of mitigation, but that its findings do not reflect an adequate consideration of Smith's conduct while incarcerated as a mitigating circumstance.


Did the District Court Judge assigned to hear the disqualification proceedings err by denying the motion to disqualify the sentencing judge?

Following the January 14, 1992, sentencing hearing, Smith filed an affidavit to disqualify the presiding judge, the Honorable Douglas Harkin, pursuant to § 3-1-805, MCA. He alleged that a comment made by Judge Harkin to defense witness Hoell on the morning of January 15 reflected personal bias or prejudice. Judge Robert Boyd, who was appointed to preside over the disqualification proceeding, found that the content of the remark was in dispute and that Hoell could have misconstrued a remark about the weather as a comment on Smith. He concluded that the comment evidenced neither bias nor the appearance of bias.

34

On appeal, Smith reasserts that Harkin should have been disqualified pursuant to the canons of judicial ethics which prohibit the appearance of impropriety and on state and federal due process grounds. We decline to address Smith's contention because we remand to a different judge for resentencing.

Remand to a different judge is not the usual remedy where, as here, an error is found in the District Court proceedings. This Court remands to a new judge only under "unusual circumstances." Coleman v. Risley (1983), 203 Mont. 237, 249, 663 P.2d 1154, 1161.

In determining whether a different judge should preside over proceedings on remand, three factors are considered: 1) whether the original judge would reasonably be expected, upon remand, to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected; 2) whether reassignment is advisable to preserve the appearance of justice; and 3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. Coleman, 663 P.2d at 1161.

Judge Harkin sentenced Smith to death based on his conclusions that aggravating circumstances existed and mitigating circumstances were not sufficient to require leniency. There is no indication that Judge Harkin would have substantial difficulty in putting his prior conclusion out of his mind if required to reweigh mitigating circumstances in light of a current presentence investigation and report at resentencing. We believe, however, that in a capital

35

case where the life of the defendant is at issue and error is found relating to the consideration of mitigating circumstances, the prudent course is to remand to a different judge to assure that the mitigating and aggravating factors are considered without regard to a previously drawn conclusion.

Furthermore, as indicated above, Smith moved to disqualify Judge Harkin on the basis of personal bias. The motion was denied and the death penalty was imposed. Given the motion to disqualify and the court's imposition of the death sentence, we are mindful that further sentencing by Judge Harkin might appear unjust. Thus, remand to a different judge will preserve the appearance of justice.

It is true that remand to a different judge will result in some waste and duplication of court resources. We conclude, however, that the benefits of remand to a new sentencing judge outweigh fiscal concerns.

We vacate the District Court's order imposing the death penalty and remand for resentencing. We direct the District Court to appoint a different judge to preside over the resentencing hearing to be conducted consistent with this opinion.

Reversed.

Karla M. Gray
Justice

36

We concur:

_____
Chief Justice

_____

_____

_____
Justices


_____
The Honorable James E. Purcell,
District Judge, sitting for
Retired Justice R. C. McDonough

Justice Terry N. Trieweiler specially concurring in part and dissenting in part.

I concur with the majority's conclusions regarding Issues 1 through 3, and 5 through 9.

I also concur with the majority's conclusion that based on defendant's plea of guilty, from which no appeal was taken, the aggravating circumstance set forth at § 46-18-303(7), MCA, was correctly found to exist by the District Court.

However, I dissent from that part of the majority opinion which concludes that the aggravating circumstance set forth at § 46-18-303(5), MCA, was present in this case.

The death of defendant's victims in this case did not result from "a scheme or operation which, if completed, would result in the death of more than one person."

There was no scheme in this case. Defendant and his companion wanted the victims' car. In order to escape with the car, they removed the victims from the car and accompanied them to the woods. During the approximate 125 foot journey from the car to the woods, defendant decided to kill his victims. This homicide was a senseless, brutal act, but there was no plan nor scheme involved.

The State contends that the requirements of § 46-18-303(5), MCA, were satisfied because defendant brought a sawed off rifle into the United States with the intention of robbing people. However, there was no evidence that his plan to rob people necessarily included a plan to end anyone's life.

38

The aggravating circumstance found in § 46-18-303(5), MCA, simply has no application to the circumstances in this case. It was thrown in for good measure by the sentencing court. However, it is not supported by the record, and on remand I would instruct the District Court not to consider it as an aggravating circumstance when sentencing this defendant.

_____
Justice

Chief Justice J. A. Turnage concurring in part and dissenting in part:

I concur with the majority opinion with the exception of its decision on Issue 3, whether the court erred in failing to order a current presentence investigation. In particular, I am concerned that the Court's opinion would seem to allow consideration of post-offense aggravating circumstances in a resentencing.

In its brief, the State relies upon Smith's failure to request a new presentence investigation. It does not address the core issue of whether a criminal defendant has a right to a new presentence investigation upon resentencing.

Other courts have held that a new presentence investigation is not necessarily required upon resentencing, subject to the facts of the case and the language of the statute requiring presentence investigations (and ours does not directly address this particular issue). Where the court has indicated that it would resentence on the basis of facts available at the time of the original sentence, a new presentence investigation is not required. United States v. Fernandez (3rd Cir. 1990), 916 F.2d 125, cert. denied, 111 S.Ct. 2249. Whether to order a new presentence investigation for resentencing is a matter of discretion with the sentencing court. United States v. Hardesty (9th Cir. 1992), 958 F.2d 910. Where the original sentencing judge resentences, supplemental evidence is presented at a resentencing hearing, or resentencing is close in time to the original sentencing, a new presentence investigation is

40

not required.  People v. Munson (Ill.App. 3 Dist. 1988), 525 N.E.2d 250, cert. denied, 530 N.E.2d 257; People v. Brown (Ill.App. 4 Dist. 1990), 555 N.E.2d 794.  Where the defendant has not requested a new presentence investigation and the court has allowed evidence to be presented at the resentencing hearing, a new presentence investigation is not required.  People v. Duboulay (A.D. 2 Dept. 1990), 551 N.Y.S.2d 582, cert. denied, 557 N.E.2d 1190.

The relevant statutes provide in their relevant parts as follows:

> **46-18-111. Presentence investigation -- when required.** (1) Upon the acceptance of a plea or upon a verdict or finding of guilty to one or more felony offenses, the district court shall direct the probation officer to make a presentence investigation and report.
> . . .

> **46-18-112. Content of presentence investigation report.** (1) Whenever an investigation is required, the probation officer shall promptly inquire into and report upon:
> (a) the defendant's characteristics, circumstances, needs, and potentialities;
> (b) the defendant's criminal record and social history;
> (c) the circumstances of the offense;
> (d) the time of the defendant's detention for the offenses charged . . .

> **46-18-301. Hearing on imposition of death penalty.** When a defendant is found guilty of or pleads guilty to an offense for which the sentence of death may be imposed, the judge who presided at the trial or before whom the guilty plea was entered shall conduct a separate sentencing hearing to determine the existence or nonexistence of the circumstances set forth in 46-18-303 and 46-18-304 for the purpose of determining the sentence to be imposed. The hearing shall be conducted before the court alone.

41

**46-18-302. Evidence that may be received.** In the sentencing hearing, evidence may be presented as to any matter the court considers relevant to the sentence, including but not limited to the nature and circumstances of the crime, the defendant's character, background, history, and mental and physical condition, and <u>any other facts in aggravation or mitigation of the penalty</u>. . . . [Emphasis added.]

**46-18-303. Aggravating circumstances.** Aggravating circumstances are any of the following: . . .

(7) The offense was aggravated kidnapping which resulted in the death of the victim or the death by direct action of the defendant of a person who rescued or attempted to rescue the victim.

**46-18-304. Mitigating circumstances.** Mitigating circumstances are any of the following:

(1) The defendant has no significant history of prior criminal activity.

(2) The offense was committed while the defendant was under the influence of extreme mental or emotional disturbance.

(3) The defendant acted under extreme duress or under the substantial domination of another person.

(4) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.

(5) The victim was a participant in the defendant's conduct or consented to the act.

(6) The defendant was an accomplice in an offense committed by another person, and his participation was relatively minor.

(7) The defendant, at the time of the commission of the crime, was less than 18 years of age.

(8) Any other fact that exists in mitigation of the penalty.

It is neither logical nor conceivable that Smith, while incarcerated on death row at all times subsequent to the presentence report and sentencing could produce any mitigating circumstance that is provided for in § 46-18-304, MCA.

42

Most certainly, consideration of aggravating circumstances as set forth in § 46-18-303, MCA, can only relate to any such circumstances that occurred at the time of the commission of the crimes of deliberate homicide and aggravated kidnapping.

If the District Court, based on a new presentencing report, considered "good conduct" of Smith on death row as a mitigating circumstance to the crimes he committed, which I submit is neither logical nor justified, may the District Court therefore consider new aggravating circumstances that occurred subsequent to the commission of the offenses? Of course not.

To consider Smith's conduct on death row as an aggravating circumstance would be not only unthinkable but unconstitutional. It would be a denial of due process of law (accused of and punished for something he may not have been charged with or did not have an opportunity to refute), and a clear double jeopardy violation--he would be again put in jeopardy for the same offense previously tried, but would risk enhanced sentencing because of an aggravating circumstance which occurred after the initial sentence was imposed.

I believe it is clear that consideration of aggravating and mitigating circumstances as set forth in §§ 46-18-302, -303, and -304, MCA, can only logically and properly relate to circumstances that occurred prior to or as a part of the res gestae of the crimes for which conviction occurred. To assume that somehow or other Smith, by being polite to his guards on death row, has established

43

a mitigating circumstance concerning the crimes he committed is neither statutorily permitted nor contemplated.

A presentence investigation has already been conducted, for purposes of Smith's 1983 conviction of these same offenses. The law does not require idle acts. Section 1-3-223, MCA. Because the relevant mitigating and aggravating circumstances have already been documented in that report, a new presentence investigation would serve no logical purpose.

I would affirm the conviction.

_____
Chief Justice

Justice John C. Harrison and District Judge James E. Purcell join in the opinion of Chief Justice Turnage.

_____
Justice

_____
Honorable James E. Purcell, District Judge, sitting in the seat vacated by the retirement of Justice R. C. McDonough

44